Mr. Martinez conviction should be overturned because his underlying deportation was invalid and because he was incompetent to stand trial. First, with regards to his 2002 deportation, he was deprived his due process right to counsel that's codified at 8 United States Code section 1362. Did he exhaust that claim with the BIA? He need not exhaust that claim for several reasons, Judge Silverman. The first is that the district court in this case implicitly ruled that he need not exhaust remedies by reaching the merits of this claim. Well, that may be what the district court said, but doesn't he have to exhaust his remedies at the BIA before we can deal with it? Is Mr. Martinez's argument that the district court made a finding that he had done that by reaching the merits of the claim? I don't understand something. Don't we review anything the district court did, De Novo? That's correct, Judge Kleinfeld. I believe that Mr. Martinez need not exhaust his administrative remedies. Let me make this a little more concrete to be sure I understand it. I thought that he got deported. He now says there was something wrong with that deportation. But when he got deported, he did not appeal his deportation to the BIA. That's correct. Mr. Martinez withdrew his appeal. He had initially indicated that he wanted to appeal. He did not need to exhaust his administrative remedies because under United States v. Ubaldo Figueroa, if the immigration judge does not make a person going through deportation proceedings aware that any plausible relief is available, any subsequent waiver or withdrawal of a right to appeal is not knowing and intelligent. I think that's what happened here. The immigration judge did not make clear to Mr. Martinez that he did have relief available, leading Mr. Martinez to believe that he did not have any relief available and that any appeal would be futile in this case. So I believe Mr. Martinez need not exhaust his administrative remedies for this Court to consider the merits of his claim and particularly the merits of his due process deprivation of counsel claim. This Court ---- On the merits, if we were to get to that. I'm having trouble understanding that either. He looks like anybody who's done criminal defense has had stubborn, foolish clients. They just won't do what their lawyer says. As to the competency issue, Judge Kleinfeld? Yes. I'm speaking as to the due process violation in the underlying deportation. In the competency issue, if you would like me to speak about that now, I can, or the ---- I'm sorry. I thought that's where you were going. As to his deportation, this Court has often held that representation ---- What was his plausible ground for relief on that? Judge Kleinfeld, his plausible ground for relief was vacating the State court conviction. Over and over, and I think this is very clear, in the transcripts of the immigration proceedings, Mr. Martinez expressed a lot of concern about what happened with his prior conviction. He expressed things such as, I thought I was innocent. They told me I was going to go free. And I think, given the record ---- So what? You go over to State jail. Everybody there was innocent. They were only there because they had bad lawyers, if you listen to them. The record here shows that Mr. Martinez had some very severe competency issues. I think that, and in my 28-J letter, I apologize for the lateness of that letter, I do include a recent INS case that discusses if a conviction is vacated, it's no longer valid for immigration purposes. I think if an attorney was with Mr. Martinez as he wanted at his deportation hearing, an immigration attorney or any attorney could have advised him that perhaps he should attempt to withdraw his plea for ---- on the basis that he didn't understand it, competency-wise. I think over and over again in his proceeding, in the deportation proceeding, he was saying that he did not ---- he was under a misapprehension of what was going on at that proceeding, that he thought he was going to go free out into the world, that he wasn't going to go into immigration custody. I think that the immigration judge in haste here rushed him through, even though he did express a desire to have counsel. I think this Court, in a whole line of cases, most recently, B. Watt v. Gonzalez, which was 2005, has emphasized that when someone does want counsel in immigration proceedings, it's critically important that immigration judges pay close attention to that. Is there any dispute about the fact that he was convicted of aggravated assault? There's the aggravated assault with a firearm? Yes. There's no dispute that he was convicted of that. He pled guilty to that. Okay. So then what, getting back to Judge Kleinfeld's point, what plausible basis would he have to resist deportation? Judge Silverman, what I was mentioning before, going back and attempting, I don't think that he understood the collateral consequences of pleading guilty to that. He does have a fairly tortured history of that. You're talking about his pleading guilty in state court? Yes. Okay. But that's a done deal, isn't it, his conviction? Isn't that a settled matter, he's been convicted of aggravated assault? There are methods of vacating pleas in state court. Okay. But he's not in state court. He's in front of the immigration judge at the time. Correct. So it's a verity that he is convicted of aggravated assault with a firearm. What plausible relief would he have had in front of the IJ? The plausible relief he would have had if he had an attorney, and I think that that's the issue here, he was focusing particularly on that conviction and saying, there was something wrong with that conviction. I didn't realize what was going on. I didn't realize what was happening. I thought I was going to go free. But the place to complain about that is in state court. Correct. Not in front of the IJ. What Mr. Martinez, I think, could have done and what an attorney could have done for him on that day is say, we need another continuance, and IJs do have discretion to grant continuances, do have discretion to grant a petitioner more time to look into other matters. But he didn't ask for a continuance, right? The immigration judge asked him, do you want an attorney, or do you have an attorney? He said not today. The immigration judge then went through all the exhibits in this case and said, I think you've had enough time. We're proceeding today. I think he'd had many months, hadn't he, at that point? Our contention is that you've had plenty of time. He did not have plenty of time, Judge Kleinfeld, because the issue is he had, I think, that it was continued three separate times. And that goes in. Three continuances. How many months? I believe it was three or four months. And he still did not have an attorney? He did not have an attorney. And he had been given a list of attorneys' names, and it had been explained to him in English and Spanish, right? It had not. That is not correct. He actually was not given notice in Spanish of the legal services list. I thought there was a transcript where it was explained to him in English and Spanish. He said the list of names was in English. But I was trying to think, how would you write Andrew J. Kleinfeld in Spanish? Probably Andrew J. Kleinfeld. The district court actually did reach this issue and said that if the notice purported by the government to the list that was given, if that was indeed what was given to Mr. Martinez, it was not in his native language. The district court found that that was a significant procedural due process issue and did make a finding on that. So I would submit to this Court that any time ---- You want us to defer to the district court, but we're not allowed to. I don't understand when you make these arguments that depend on our accepting a district judge determination. You've been calling them findings, but I don't think they are findings of fact, are they? There's no evidentiary hearing, just conclusions of law? These were the findings that he was making about the evidence before him. I'm just putting that to Your Honor as this was what the district court said with regard to the legal services list. So it would be my argument that any time where he was not actually advised that there were free legal services available wasn't time that actually accumulated because he didn't know that those legal services existed. And I would reserve my remaining time for rebuttal. Thank you. Thank you. Counsel. Good morning. May it please the Court. Valerie Chu for the Appellee of the United States. In this case, as the Appellant's counsel and panel has already determined, the key issue here is whether or not there was prejudice that would allow the Appellant's As an additional matter, I would note that this is a key case in which exhaustion of remedies would be absolutely appropriate. In fact, that would be the prime avenue for the Appellant to have sought redress of the wrongs that he claims were done to him at the deportation hearing. It is clear here that he, in fact, did not exhaust his administrative remedies while being advised of every opportunity in his right to do so. I would note that the district court did find that he, in fact, did not exhaust his administrative remedies. That's at Supplemental Excerpts of Record, page 26. I would dispute the Appellant's contention that the district court did not so find. Furthermore, in this case, he was not deprived of the opportunity for judicial review. The record of the transcript of the deportation hearing indicates that the immigration judge did advise him of his opportunity to appeal the case. And, in fact, he did reserve his right to appeal. He, in fact, filed an appeal in this case and then decided to withdraw it. So it is not a case in which he made a waiver of his right to appeal at the immigration hearing and then therefore, because he was not properly advised of whatever relief was available to him, that there was a due process violation on that ground. He was advised of his right to appeal. He, in fact, reserved it. There is not a question of a waiver in this case. And in this case, Your Honor, turning to the prejudice prong, once we ---- Give me a little help on this. Frankly, the way the Appellant's argument was developed, that oral argument, did not really match my outline of how I was understanding the logic of the case. And that may be my fault, that maybe I didn't understand it. But I'd like you to put this into what you think is the proper logic for how you go about deciding what you think the proper steps are. Your Honor, in this case, the proper steps are provided by Congress's statute in Title 8 U.S.C. 1326d in providing ---- I don't mean prove it. I just mean lay it out. Well, to provide perhaps an initial factual context for what occurred here, in this case, the Appellant was given notice of the initial master calendar hearing, which was in December of 2001, after a series of continuances to first February 5th, then March 20th, then April, I believe April 20th, and then finally the actual deportation order was rendered at the end of the hearing on May 21st, at which time in several of those occasions, the Appellant actually requested continuances so that he could seek counsel. In each of those cases, he was given a notice of the next hearing. He appeared at the next hearing. He was also given notice that he would be allowed to have representation at his own expense at the next hearing. He was also advised that a list of free legal services was provided to him at ---- with the notice to appear. The immigration judge subsequently found on the record he had asked him, were you advised of the rights that you had intended upon this proceeding, as well as your right to appeal? And he indicated that he did ---- was advised, he did recall that, and he did understand those rights. Was he told in English and Spanish? He was told in English and in Spanish. Well, he was told, I believe, in Spanish, Your Honor. The immigration judge made the advice in English, and that was translated with the court certified interpreter who was present at the time. What the Appellant raises, at least in the initial brief, the opening brief, was that the denial of the right to counsel was what was the claim, due process violation. It appears apparently in the reply brief that that has now been a little bit either mischaracterized or a different claim has been added that it would actually, he was not advised of a brief that relief that was available to him that made it a due process violation. I would contest that that claim was not raised in the initial brief, and I would oppose that on that basis. However, in each case, the record does not bear out that, in fact, Mr. Martinez was entitled to any relief because of the prejudice that was involved here. And this is where we get to the prejudice prong of this case. And while not sending us ---- while not conceding that he didn't have to exhaust his administrative remedies, and the case that decided for that proposition that he didn't have to is, again, a case about a waiver of appeal, which is not what we had here in this case. He did not waive appeal at the immigration hearing. He, in fact, reserved appeal, did issue an appeal, and then subsequently withdrew it. So he was given these opportunities. All the cases that are cited by appellant are in that context, that are appeals from the immigration judge's orders up to the Board of Immigration Appeals, and then, if necessary, to this Court. So clearly, this Court and that process is the one that Congress has designated was the appropriate one for reviews of this nature, because otherwise the appellant requires this Court to engage in series upon series of speculation in order to get at a potential prejudice in this matter, and prejudice is required by the law of the circuit and the controlling authority in this case. And that prejudice claim is that there was some requirement that the immigration judge advise him that he had the right to potentially withdraw this nullicatendere plea before the State court, and that somehow that may have affected whether or not that would be a valid immigration, a valid aggravated felony conviction for the purposes of the immigration court and the deportability of the appellant. But in this case, that overlooks the key fact here that the appellant was convicted of assault with a firearm. It is uncontested, as appellant's counsel was asked, that he was, in fact, convicted of an aggravated felony, and that precluded any possibility of relief for the Mr. Martinez. This potential that he could have withdrawn the nullicatendere plea because he was potentially not advised of immigration consequences is unsupported either by the record in this case or by the law. As an initial matter, there's a little bit of unsettled law in this area. The case cited in the Rule 28J letter, Adimatiac, indicates that a withdrawal of a nullicatendere plea may be and may serve to preclude finding that the alien is deportable based on that ground. However, there's unsettled law in the Ninth Circuit, at least in Murillo-Espinosa v. INS. Roberts, you're talking too fast for me to understand you. Which case says that he had his claim that he might seek or could have sought to withdraw his plea in State court because he was not told of the immigration consequences nevertheless has no bearing on his Federal proceeding? That's the case cited in the appellant's Rule 28J letter. That's Adimiak, In re Adimiac. And just to clarify, Your Honor, in that case, the Board of Immigration Appeals did find that that rendered the conviction not eligible to be the alien was no longer having been convicted of an aggravated felony because it had been withdrawn by the State court. It had been withdrawn. It wasn't just that he claimed that he might have a basis for withdrawing. That's correct, Your Honor. And in this case, that's exactly the notion why exhaustion of the remedies is appropriate in this case, because it allows a record to be fully developed, allows the proper appeals and State proceedings to be conducted so that this Court does not have a sit in speculation, because what the appellant asks this Court to do is to speculate as to what the immigration attorney would have done in the immigration hearing, how the immigration judge would have reacted to that, what would have happened in the State court proceeding separate from the immigration proceeding, what would have happened in response to that proceeding, whatever it was, whether it was a grant of the motion to withdraw the Milla contendere plea or denial of that motion. It is, as a side note, it's not even clear whether the appellant would have wanted that, because in that case, it was this plea, which was a sentence of time served, was in response to a the appeal and remand for a new case of the attempted murder conviction that the appellant had already suffered a jury conviction, and that was later on appealed and remanded. This plea bargain here may not have been something that he wanted to get out of. It's not clear that the district attorney would have reoffered the same deal had the appellant tried to get out of this deal by trying, by claiming that there was no immigration consequences advised to him. Furthermore, what is the biggest roadblock I see for this is that the record does not admit of any possibility that he was not, in fact, advised of the immigration consequences of his guilty plea. And I would note at page 79 of the supplemental excerpts of record, the immigration judge specifically advised the appellant, you understand also that if you are not a citizen of the United States, if you plead guilty to this charge and you are sentenced to State prison, you will be deported by the Immigration Service. You will not be permitted to return to the United States. And if you should file a petition for naturalization, that petition would be denied. Do you understand that? Roberts. Thank you, counsel. Thank you, Your Honor. Your Honor, if I could speak briefly to the issue of prejudice here. An argument raised in Mr. Martinez's brief is that it is, in fact, an open question in this circuit where the – specifically the denial of counsel in immigration proceedings is concerned whether prejudice need be shown. And I would cite to the United States the Ahumada-Aguilar case for that proposition. In that case, this Court found that the defendant's due process rights to counsel were, in fact, violated. And I think the language in that court – in that case is particularly interesting and important because it does state – it remains unsettled in this circuit whether showing of prejudice must be made where the right to counsel has effectively been denied a respondent in an immigration hearing. So it's my contention here that prejudice need not be shown where such a fundamental right as the right to counsel has been denied. And that is, in fact, what happened to Mr. Martinez. He did want an attorney. He was not properly advised of the free legal services available to him. And I believe that the fact that the contents of the notice to appears, which are in the excerpts of records here, it just says the contents of this notice were translated. The immigration judge still has an affirmative duty to advise the person in immigration proceedings on the record about attorney representation and must make a specific finding as to whether that person has waived the right to an attorney. And that did not happen here. Thank you. Thank you. United States v. Martinez is submitted.
judges: Lay, Kleinfeld, Silverman